RATCLIFF v. THE PEOPLE.

1. INFORMATION—VERIFICATION—CONSTITUTIONAL LAW.
Under the amendatory act of 1893, an information need not be verified except in cases in which no preliminary examination has been had, or waived.   The act as amended is not in derogation of section 7 of the bill of rights.

2. REPEALS—STATUTORY CONSTRUCTION.
When a section of a statute is amended "so as to read as follows," setting it forth as amended, so much of the original section as is omitted is repealed.

3. CRIMINAL LAW—INFERENCE FROM USE OF DEADLY WEAPON.
The taking of human life by the use of a deadly weapon does not necessarily justify the inference that the killing was either willful, deliberate or premeditated, but such inference may be warranted under some circumstances.

*Error to the District Court of Chaffee County.*

Mr. V. G. HOLLIDAY, for plaintiff in error.

THE ATTORNEY GENERAL and Mr. F. P. SECOR, of counsel, for the People.

MR. JUSTICE GODDARD delivered the opinion of the court.

The plaintiff in error was convicted of the crime of murder of the first degree, and sentenced to suffer the death penalty. He was tried upon three separate informations, which respectively charged him with the deliberate and premeditated killing of George Douglas Wyatt, Samuel Taylor and L. F. McCurdy  On motion of his counsel these informations

were consolidated for trial upon the ground that the offenses charged were of the same character and grew out of one and the same transaction. Separate verdicts were rendered. The record before us presents the proceedings in the Wyatt case, which are identical with those in the other cases. From this record it appears that upon a complaint duly sworn to before a justice of the peace, plaintiff in error was arrested and brought before said justice for a preliminary examination; that he waived examination and was bound over to appear at the next ensuing term of the district court. A transcript of the proceedings before the justice of the peace was duly certified to the clerk of the district court and filed in his office before the first day of the next term. At that term, by leave of the court, an information charging the plaintiff in error with the crime of murder, signed by the district attorney, was filed upon this transcript. The information was not verified. The fact that the information was unverified is the principal ground relied on for reversal. It is insisted that the act of 1893, amending section 2 of the act of 1891, in that it provides for no verification of an information in case a preliminary examination has been had, is in derogation of section 7 of our bill of rights, which provides that "no warrant to search any place or seize any person or thing shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing."

The case of *Lustig v. The People*, 18 Colo. 217, is cited in support of this claim. In that case the court had under consideration the act conferring jurisdiction upon county courts in misdemeanor cases, and the validity of a conviction thereunder upon an unverified information; and it was held that a prosecution and conviction under an information not supported by an oath or affirmation was in violation of said section, and could not be upheld. But it will be observed that the act under consideration in that case provided for the initiation of a prosecution upon the filing of an informa-

tion in the county court, and the issuance of a warrant of arrest thereupon, without any preliminary affidavit or examination, a proceeding clearly in violation of the requirements of section 7 of the bill of rights. But the information act of 1891, as amended in 1893, is not amenable to this objection, since it expressly provides that unless a preliminary examination has been had, or waived, the information must be supported by a proper and sufficient affidavit before a warrant of arrest can issue. The objection, therefore, to the information under consideration is not supported by the reasons that controlled the decision in that case. The information act under which this prosecution was had has been before this court for consideration in several cases, and in each the constitutionality and validity of its various provisions has been upheld. See *In re Dolph*, 17 Colo. 35; *Jordan v. People*, 19 Colo. 417; *Nesbit v. People*, 19 Colo. 441; *Brown v. People*, 20 Colo. 161.

In the first three cases convictions upon informations based upon preliminary examinations were sustained. It does not appear from the records in those cases whether the informations were verified or not, but in the latter case the objection to the verification of the information relied on for a reversal was, in its force and effect, the same as the objection now urged, the information being verified only by the district attorney, on information and belief. The record failed to disclose whether a preliminary examination was had, and a motion to quash the *capias* issued upon the information, for the reason that the same was not supported by oath or affirmation, was overruled. It was held that in the absence of evidence to the contrary, it would be presumed that a preliminary examination was had, and in that event the verification was sufficient. In discussing the provisions of the act of 1891, touching the manner in which information should be verified, we said:

"By these provisions two conditions are provided upon which an information may be filed. *First*, where there has been a preliminary examination or the same has been waived,

and *second*, where the prosecution has its inception in the district court and the information furnishes the foundation for the issuance of a *capias*. In the latter case it is provided that the information shall be supported by the affidavit of some person who has knowledge of the facts and verifies them upon his own knowledge. Section 2 contemplates the verification by the district attorney in cases where a preliminary examination has been had. In the latter instance his verification upon information and belief is sufficient, since the arrest of the party charged must have been made upon warrant issued upon the requisite affidavit before the justice or examining officer, which affidavit, warrant, etc., are required to be delivered by the examining magistrate to the clerk of the court having jurisdiction of the offense." *Brown v. People, supra.*

Since the decision in that case the legislature, by the act of 1893, has amended section 2 of the act of 1891, and dispensed with the unnecessary and useless formality of a verification by the district attorney, on information and belief, and provided that in case a preliminary examination has not been had, or waived, the information shall be verified by the affidavit of some person who has knowledge of the commission of the offense. This amendment, however, in no way affects the application of our views, as therein expressed, to the case at bar, since a preliminary examination was had and the arrest of plaintiff in error was made upon a warrant issued upon a sufficient affidavit before the justice of the peace.

We deem it unnecessary to notice at length the argument of counsel for plaintiff in error to the effect that the act of 1893 does not repeal section 2 of the act of 1891, but leaves in force the provision requiring the information to be verified by the district attorney, upon information and belief. It is sufficient to say that the amendment was passed in strict conformity with the requirements of the constitution, and the section as amended stands in lieu of the original section, and so much of that section as is omitted therefrom is necessarily repealed. Endlich on Int. of Stat., sec. 196, and cases there cited.

Counsel for plaintiff in error urges with much earnestness, especially in his oral argument, that the evidence is insufficient to sustain the verdict, since it fails to show that the killing was done with that deliberation and premeditation essential to constitute murder of the first degree; that it appears from the dying declaration of Wyatt that there was a heated discussion between the parties at the time, and that the cause of the quarrel was of such a nature as to arouse the passions of plaintiff in error to an uncontrollable pitch, and that the state of his mind at the time of the killing was such as to reduce the crime to manslaughter. But, unfortunately for counsel's argument, neither the conduct of plaintiff in error nor his testimony tends to support such a theory. He does not claim that he acted under such an impulse, but seeks to justify the killing upon the ground of self-defense. After stating his prior trouble with Wyatt, Taylor and McCurdy, as members of the school board, and his inability to obtain schooling or books for his children, and after stating that his visit to the schoolhouse on this occasion was in regard to a letter he had received from a Mrs. Crockett, notifying him that McCurdy, at a meeting of the school board in May, 1894, had slandered his daughter, and that he had entered the schoolhouse where Mr. Wyatt was alone, and that Taylor and McCurdy afterwards came in, he says:

" Then I told them my business; that I was on the road to Fairplay to bring suit under this letter I had received from Mrs. Crockett, informing me my life was in danger, and that Mr. McCurdy had made this statement—that one of my children was six months pregnant, and he had made it there before the board last summer, and they knew it was an infamous falsehood, and unless they plead guilty I should bring suit for libel and damages. Mr. Wyatt was still sitting on the table, and he laid his hands on either side of him and swore no live man could bring him before the court on a charge like that. I immediately replied: 'Gentlemen, I am a live man, and unless you plead guilty, as I stated before, I will bring charges that will bring you before the court this month,

at Fairplay, if I live to get there.' And then, when I made
the reply, that I intended to bring this suit before the court
unless they plead guilty, Taylor waved his left hand in an
angry way; Wyatt passed around Taylor and took his place
between Taylor and McCurdy; Taylor waved his left hand,
put his right hand in his overalls pocket in an angry manner,
and he said: 'Now, boys!' and they came down at me at a
rapid gait, talking and hollering; you couldn't hear what
they said. I begged them to stay where they were. I says:
'Gentlemen, stay where you are, I can hear just as well from
here.' I got the gun as quickly as I could. By that time
they had got somewhere past the stove. I saw there was no
show of letting up, and they couldn't hear anything I said,
nor I, for the noise they were making. I threw up my hand
and told them to halt; they didn't halt at all. I fired into
the floor to stop them; they just made a start. Says I:
'Stay where you are or the next one is yours.' Taylor
waved his hand again for the other two to pass around the
benches, as I understood him, and made his spring forward at
me, and I fired."

After stating in detail the manner in which the three men
were shot, he further says:

"I was afraid my own life would be taken at the time I
done this shooting, and shot these men simply to protect my
own life. When I shot Taylor I thought he was in the act
of drawing his hand from his pocket with a gun to take my
life."

This testimony certainly precluded any inference that the
killing was done in the heat of passion, or under an uncon-
trollable impulse, whatever credence it may be entitled to as
tending to establish the theory of self-defense. Therefore
the material inquiry is whether, from all the testimony intro-
duced upon the trial (the jury manifestly discrediting the
defendant's version of the encounter), they were warranted
in finding that the killing was deliberate and premeditated,
notwithstanding the dying declaration of Wyatt is contra-
dicted by the plaintiff in error, who was the only other eye-

witness of the homicide.   It appears from letters written by him to the county superintendent of schools that he entertained a feeling of animosity against Wyatt, Taylor and Mc-Curdy, whether justifiable or not, on account of their action as members of the school board, in refusing to furnish his children with such school facilities and the use of school books that he claimed were furnished other children in the district.   And it is also shown from his and other testimony in the case that this feeling was aggravated by the rumor that McCurdy, at a former school meeting, had made slanderous accusations against one of his daughters; and that, incensed by these real or imaginary wrongs, he went to the meeting of the school board on the day of the homicide armed with a loaded Winchester, for the avowed purpose of obtaining a retraction by the members of the board of this slanderous statement.   His version of what occurred after entering the schoolhouse is above given.   The only other testimony as to what then occurred is the dying declaration of Wyatt, which is as follows :

"I, Douglas Wyatt, realizing my condition to be precarious, do depose and say : I was shot by Benj. Ratcliff, as was also Saml. Taylor and L. F. McCurdy.   Taylor was shot first, McCurdy next, then myself.   No one else armed.   No blows struck before shooting.   Heated discussion preceded shooting.   Ratcliff claimed we (Taylor, McCurdy and myself) had slandered him; said he had an intrigue with his own daughter.   No attempt made by any of the parties to assault Ratcliff.   Five shots fired.   First shot accidental, struck the floor in front of Taylor.   A few minutes elapsed between 1st and 2nd shot.   2nd shot struck Taylor.   Two shots fired at McCurdy.   One shot fired at myself.   I was shot at far end of room looking from door.   Ratcliff stood near door, behind seats, when he fired shots.   No conversation took place after 1st shot was fired."

As was said in *Power v. The People*, 17 Colo. 178 :

"It is true, also, that the taking of human life by the use of a deadly weapon does not *necessarily* justify the inference

that the killing was either willful, deliberate, or premeditated. But that such inference *may* be warranted from the use of a deadly weapon under certain circumstances, cannot be successfully controverted."

And in *Hill v. The People*, 1 Colo., at page 448, it is said:

"The statute has not declared that homicide, effected by means of a deadly weapon, shall be punished with death, but deliberate or premeditated homicide is so punishable; therefore, the ultimate point which the evidence must extend to and establish, is not the use of a deadly weapon, but the deliberation or premeditation with which the fatal act is done, and whether the intention is shown by evidence of antecedent menaces, former grudges, lying in wait, the means employed to effect the homicide, or any other circumstances which may give assurance of it, I think that it is to be submitted to the jury to find the fact under the direction of the law."

We think, therefore, it being within the province of the jury to determine the credibility of the witnesses and the weight to be given to the testimony, that there was evidence before them amply sufficient to justify their finding that the killing was willful, deliberate and premeditated. And the evidence having been properly submitted to them under full, explicit and correct instructions as to the law of the case, their verdict of murder of the first degree must be sustained.

No other error of importance being urged, the judgment of the district court must be affirmed, and an order will be entered of record, appointing and designating the calendar week commencing February 2, A. D. 1896, as the week for carrying the judgment of the district court into effect, as the statute provides.

*Affirmed.*