No. 15,903.

SANDOVAL *v*. THE PEOPLE.
(192 P. [2d] 423)

Decided March 15, 1948.   Rehearing denied April 12, 1948.

Mr. V. G. SEAVY, Mr. WALTER PREDOVICH, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

MR. JUSTICE LUXFORD delivered the opinion of the court.

PLAINTIFF in error, Pete Sandoval, hereinafter designated defendant, was convicted of the crime of murder of the first degree and sentenced to imprisonment for life. He brings the case here for review alleging points of error which we consider under: (1) The evidence was insufficient to support a conviction of murder of the first degree; (2) the verdict was based upon false and perjured testimony; and (3) the court erred in refusing to give defendant's tendered instructions.

The record discloses that about 4:30 o'clock on the afternoon of April 16, 1946, defendant arrived at a tavern in Trinchera, Colorado, where Tito Sandoval, hereinafter called Tito, and others were drinking beer. Tito had been drinking there for more than two hours before defendant arrived. They all continued to drink for a time when Tito, seeming "to be drunk," called defendant "bad names." Defendant left the tavern, but returned later, when Tito again called him "bad names." Thereafter defendant armed himself with a gun. The circumstances under which he did so were stated by him on the witness stand as follows: "Q. When you got out of the car, did you put it [the gun] in your boot? A. Not right away. I took it out after. Q. You went inside first to see what was going on, and then you came out and got it, is that it? A. Yes. Q. When did you get it, get the gun? A. The second time I come back. * * * Q. About six o'clock you came out and put the gun in your boot? A. Yes. Q. Had you talked to Tito then? A. I talked to him before. * * * Q. You thought you were

going to get into a fight, did you? That is the reason you put your gun in your boot, wasn't it? A. No. The reason I got it from the car, because Urbano Sanchez was there, and some little kids. I didn't want nobody to go and steal it. Q. You had your car locked, didn't you? No; it didn't work. The lock don't work." Inside the tavern Tito again called defendant more "bad names," and the latter told Tito he did not care to have any trouble in there, and several witnesses testified that he said "let's go outside." This, defendant denied, and stated that Tito was the one who made the suggestion. In any event they went out, defendant first, then deceased, followed by others. Defendant says Tito struck him on the shoulder as they went out. If this occurred, none of the other witnesses testified to seeing it. Defendant ran or backed away followed by Tito. After they had gone some distance, defendant testified that Tito drew a pocket knife, whereupon he took his gun from his boot, fired one shot, warned Tito not to come close, then shot again. Other witnesses standing close by say that defendant fired three shots, one after another, that one or more of them struck Tito who fell dead. It was dusk, but not dark, and none of the witnesses saw Tito have a knife, nor was any knife thereafter found on or about his body. Immediately following the shooting defendant fled, but, after a few days, surrendered to the sheriff.

■■ 1. It is contended that there is no proof of first degree murder in this case, and that the court erred in giving instructions covering that subject. With this we do not agree. Similar cases have been before this court in which verdicts of first degree murder have been upheld. In *Patton v. People*, 74 Colo. 322, 324, 221 Pac. 1086, we said: "The defendant, at the trial, contended that he shot Menschew in self-defense, and there is evidence that the deceased and Meeter were pursuing defendant and that he was trying to get away. The evidence was conflicting but, after a thorough examination of all the evidence, we find there was ample to sustain

the verdict and we cannot disturb it. * * * The defendant's own testimony * * * shows that he had entertained no ill feeling toward the deceased, and that he could not imagine what, if anything, the deceased had against him. * * * Finding no reversible error in the record the supersedeas is denied, and the judgment affirmed."

Again in *Robinson v. People,* 76 Colo. 416, 418, 232 Pac. 672, we quoted from Wharton on Homicide (2d ed.) §180, as follows: " 'Premeditated' does not require positive proof of an intent prior to the commission of the act, as such prior intent may be inferred from the act." And continuing we said: "In *Van Houton v. People,* 22 Colo. 53, 43 Pac. 137, it is said: 'In this case the proof must establish deliberation and premeditation to support the verdict. Time, however, is not essential if there was a design and determination to kill formed in the mind of the defendant previous to or at the time the mortal wound was given. It matters not how short the interval, if it was sufficient for one thought to follow another, and the defendant actually formed the design to kill, and deliberated and premeditated upon such design before firing the fatal shot, this was sufficient to raise the crime to the highest grade known to the law. By the statute the jury are expressly authorized to designate the degree in case murder is established. * * * Under these acts premeditation and deliberation are matters of inference and presumption to be drawn by the jury from the facts and circumstances leading up to, surrounding and explanatory of the homicide.' The defendant's being armed, and his use of a deadly weapon, was evidence of intent. 30 C.J. 290. The act of killing, and the fact that some time elapsed after Wright sought to eject Pearl Horton, a friend of plaintiff in error, before the shot was fired, are circumstances from which premeditation may be inferred. We cannot say as a matter of law that premeditation was not shown, or that the verdict is not warranted by the evidence." We also said in *Maestas v. People,* 91 Colo. 36, 38, 11 P. (2d)

227: "He [defendant] testified that after the struggle with Addis had ceased and he was leaving the scene, Addis called to him, and when he returned to Addis, Addis attempted to strike him with a car crank or some other similar instrument; that he retreated but that Addis persisted in the attempt to injure or kill him; that he fired three shots to scare Addis, but when this proved ineffectual, he shot Addis because he believed his life was endangered and that the shooting was absolutely necessary for his own protection. There was evidence that Addis had no instrument of any kind, and no such instrument as described by defendant was found in or near the car. * * * The jurors were instructed upon the question of premeditation and deliberation, and we must assume they followed the law as given them." See, also, *Ratcliff v. People*, 22 Colo. 75, 79, 43 Pac. 553. True, none of the foregoing cases is exactly like the case at bar, but the principles of law announced therein are applicable here, are decisive of the issues presented, and support the jury's verdict. The evidence was conflicting, but after a thorough examination of the entire record, we find it was sufficient to sustain the verdict which, under the established rule, will not be disturbed on this review. The court was right in instructing the jury as it did.

2. Perjured testimony. After carefully considering the affidavits and counter-affidavits we are satisfied that there is no merit in the contention that the verdict was based upon false and perjured testimony.

3. Instructions. The court was right in refusing to give defendant's tendered instruction No. 1, on self-defense, inasmuch as by its instruction No. 18, it fully covered the subject. *Van Houton v. People, supra.*

3a. Defendant offered an instruction, No. 2, on the question of the peaceful or quarrelsome character of Tito, concerning which some testimony had been given. It is well to note here that Tito and defendant were about the same size, defendant was thirty-seven years

of age, Tito probably a little younger, and they had known each other for years. Tito was married and had worked as a railway section hand at Trinchera for some time. Defendant had been raised on his father's ranch twenty miles from Trinchera, and he had been convicted of horse stealing in New Mexico. The record herein does not disclose that Tito at any time threatened defendant. There was no evidence that he ever carried a gun or had ever used a knife or any other weapon to injure anyone. There was no evidence indicating that he was a violent, dangerous and bloodthirsty man, and we cannot conclude that he was such from the fact that he used "bad words" and was drunk and quarrelsome.

The testimony tending to prove the peacefulness or quarrelsomeness of Tito was not coupled with his character as a violent, dangerous and bloodthirsty man. This being true, the court properly refused to give defendant's tendered instruction No. 2. *King v. State,* 17 Ala. App. 381, 85 So. 876.

The judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE HAYS dissent.