Frederick P. BOOTH, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 4217.

Supreme Court of Wyoming.

Jan. 14, 1974.

J. T. Langdon, Worland, C. S. Hinckley, Basin, for appellant.

Clarence A. Brimmer, Atty. Gen., George S. Andrews, Sp. Asst. Atty. Gen., Cheyenne, Robert A. Gish, County and Pros. Atty., Basin, for appellee.

Before PARKER, C. J., McEWAN, McINTYRE and McCLINTOCK, JJ., and RAPER, District Judge.

Mr. Justice McEWAN delivered the opinion of the court.

The defendant was found guilty, by the court sitting without a jury, of two counts of negligent homicide, § 31–232, W.S.1957,[1] alleged to have occurred while driving a vehicle in reckless disregard for the safety of others which caused the death of two

persons. Under the terms of the judgments and sentences he was ordered to pay a fine of $500 on each count and was sentenced to be imprisoned in the county jail for six months on each count with sentences to run consecutively, the sentences being suspended and defendant placed on probation, from which judgments and sentences he has appealed.

Shortly after midnight on July 2, 1971, defendant, while driving a pickup truck approximately three miles south of Greybull, Wyoming, collided with a motorcycle occupied by John Randy Barnett and Thomas B. Henderson. He was traveling north on State Highway U.S. 20, and the decedents were proceeding in a southerly direction. The highway was level, with a slight curve to the west or the defendant's left. The road was 40 feet in width, the traveled portion being 27 feet, and two shoulders 6½ feet each of identical material to the traveled portion of the highway. The highway at that point was marked with a broken yellow stripe signifying that passing was allowed, and the maximum posted speed limit was 65 miles per hour. The night was quite dark.

Thereafter, on July 15, 1971, the defendant was charged with two counts of manslaughter, § 6–58, W.S.1957. The defendant filed a motion to dismiss the information for the reason that the gravamen charged follows under the negligent homicide law, § 31–232, and not under § 6–58, the latter having been impliedly repealed in matters of vehicular homicide. Apparently as a result of the trial court's ruling on the motion the State amended the information and charged the defendant with two counts of negligent homicide under § 31–232 (misdemeanors), instead of manslaughter under § 6–58 (felonies).

---

1. Section 31–232, which was originally enacted in 1939, provides:
 "(a) When the death of any person ensues within 1 year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide.

 (b) Any person convicted of negligent homicide shall be punished by imprisonment for not more than 1 year or by fine of not more than $1,000, or by both such fine and imprisonment. * * *"

The defendant argued that the State failed to prove his guilt beyond a reasonable doubt, and the court committed prejudicial error in the admission and exclusion of certain evidence.

The facts as most favorable to the State's position and as adduced during the course of the trial show the following events transpired. The defendant left the golf club, which was about ten miles south of Greybull, at about midnight and proceeded towards Greybull. During the 2½ hour period prior to the collision he consumed five highballs and ate a sandwich. One and one-half hours after the accident he had a blood alcohol of .142, and at the time of the collision his blood alcohol would have been not lower than .162. With a blood alcohol of .14 he would, according to medical testimony, have experienced a certain lack of coordination and inhibition in his actions and his talk, and ataxia would be present resulting in unsteadiness while walking or trying to do his tasks. The point of impact was in the center of the left-hand lane and the defendant had merely "drifted over into the wrong lane." He was driving 60 to 65 miles per hour, the night was dark, and the headlight on the decedents' motorcycle was lighted.

Following the collision the defendant stated to several people that he was not passing a car but had merely "drifted" over into the left lane. He had told other persons, and testified at the trial, that he was passing another vehicle when the collision occurred and he did not see the motorcycle. There was therefore a conflict in the evidence and it was up to the trier to make a determination of what transpired. Accordingly, the trial court could have found that defendant was not passing another car but had merely drifted into the left-hand lane.

 Facts that a person who had been drinking to such an extent that it impaired his driving ability, drove his vehicle at 60 to 65 miles per hour on a dark night upon the wrong portion of the highway for no apparent reason and collided with a motorcycle with an operating headlight, would constitute sufficient evidence to sustain the finding that he was driving a motor vehicle in reckless disregard of others. While we need not determine if any one of the noted factors in itself could constitute reckless disregard, we do say that here, even in the absence of one of the noted elements, there would have been sufficient basis for a reckless disregard finding. See the discussion of "reckless disregard" in State v. Rideout, Wyo., 450 P.2d 452 at 453.

 "Appellant takes the position that the State wholly failed to prove beyond a reasonable doubt any of the allegations set out in the bill of particulars." We understand the defendant's argument on this point to be that the prosecution must prove all of the elements set forth in the bill of particulars. While the effect of a bill of particulars is to limit the scope of the prosecutor's proof, we find no basis for the defendant's contention that the prosecution must prove all of the allegations set forth in the bill. A bill of particulars, as provided for in Rule 9, W.R.Cr.P. (Rule 7, Fed.Rules Cr.Proc.), is not a part of the information and does not change the offense charged. It is designed to make more specific the general allegations in the information to enable the defendant to prepare his defense and avoid being surprised at the trial. In the trial the prosecution is limited to those acts which were set out in the bill of particulars which it deemed to constitute the gravamen of the offense. State v. Rideout, supra, 450 P.2d 452. See also 1 Wright, Federal Practice and Procedure, § 129, p. 283 (1969), and 42 C.J.S. Indictments and Informations § 156a, p. 1092.

 The defendant argued that the results of his blood alcohol test should not have been admitted into evidence. We need not consider the constitutional questions made by the defendant, however, because it was established the defendant voluntarily submitted to the blood test. He

testified that he voluntarily took the blood test, and the trial court so found. The question of voluntariness is one of fact to be determined in light of all attendant circumstances. Mares v. State, Wyo., 500 P. 2d 530 at 534. Defendant was 37 years of age and had been a practicing dentist for 12 years. He was an educated person, having attended college for three years and dental school for four years, and the record clearly discloses he knew what was transpiring when he was asked to take a blood test, and freely and without compulsion did so.

■ The defendant asserted the testimony of one of his witnesses, Max Coleman, which was favorable to him, was totally unimpeached and the trial court should have given more weight to that witness' testimony. There was other credible evidence from which the court could have reached a different conclusion from that which the defendant urged. It was up to the court as the trier of fact to determine the weight to be given to all evidence. Buckles v. State, Wyo., 500 P.2d 518 at 521.

■ There was testimony that decedents had been drinking just prior to the collision and the defendant sought to develop this point through the County Coroner, Delmar W. Atwood. He was called as a witness for the State and testified on cross-examination that he drew samples of blood from the two decedents which he sent to a pathologist from whom he received a record of the blood alcohol content. He was asked the results of the test, to which question objection was made upon the ground that there was no proper foundation and no showing of custody of the blood samples. The objection was sustained on that ground and for the further reason that it was outside the scope of direct examination. The trial court indicated that the defendant could pursue the question further by calling the coroner as a witness, but he did not call the witness. When the objection was sustained counsel responded: "I was interested, Your Honor, in finding out the extent to which the county wanted its records disclosed. That was the only purpose of the question." The defendant did not seriously pursue the question below, and we find no validity to his argument here. While no mention was made to the trial court, he submitted in his brief before this court that the coroner's record should have been admitted under the Uniform Official Reports as Evidence Act, §§ 1–165 through 1–169, W.S.1957, and the Uniform Business Records Act, §§ 1–170 through 1–173, W.S.1957. While we need not consider these contentions because they were not raised in the trial court, we note there was no showing that the reports the defendant sought from the coroner came within the purview of either of the referenced Uniform Acts.

■ The trial court admitted into evidence the headlight and speedometer of the motorcycle which the defendant contended was error because there was no showing that they were in substantially the same condition as when the act was committed. He recognized the admission of such evidence was discretionary with the trial court if it was satisfied there had been no substantial change in the article as to render the evidence misleading, and cited Friesen v. Schmelzel, 78 Wyo. 1, 318 P.2d 368. Following the collision the motorcycle and the headlight and speedometer, both of which had been broken off the motorcycle, were loaded into the back of defendant's pickup which was then towed to an automobile dealer's garage in Greybull. During the next seven days the State exercised no custody over the exhibits which were accessible to many persons entering the garage. We agree with the defendant that the State could and should have been more objective in its handling of these items of evidence. The State apparently sought to use these exhibits to bolster its theory that the headlight on the motorcycle was lighted at the time of the accident. We say bolster because there was other evidence from which the court could have based its finding that the headlight was lighted. A special agent with the Federal Bureau of Investigation examined the headlight and

speedometer. He testified that in his opinion the light bulb portion of the headlight unit had been intact at the time of the collision, but he could not ascertain if the light bulb was functioning at the time of the collision . because the electrical portion of the bulb was missing. He did testify that based upon his examination of the light bulb in the speedometer he concluded it had been on and burning at the time it was subjected to an impact force. Therefore, the most that can be said for the agent's testimony is that it may have been some basis for establishing that the light bulb illuminating the speedometer was operating at the time of the collision. His testimony did not establish anything as to the headlight, which was the only material item of the two exhibits. While an examination of all the evidence regarding the headlight and speedometer convinces us that the trial court did not commit error, even if it had been error to have admitted the exhibits it would not have been prejudicial since the exhibits were not damaging to the defendant because they did not establish anything favorable to the State. The exhibits were not admitted until after completion of all the testimony of the F.B.I. agent, and the defendant's argument would seem to have been more properly directed to the admissibility of testimony of the agent.

We are convinced upon examination of the entire record that the defendant had a fair trial and was represented by most competent and aggressive counsel. Through the convincing efforts of counsel the information was amended resulting in the felony counts being deleted and misdemeanor counts being instituted. The facts would seem to support the felony charges.

The judgments and sentences are affirmed.

GUTHRIE, J., took no part in the consideration or decision of the case.