Curtiss JANSEN, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 93–108.

Supreme Court of Wyoming.

April 4, 1995.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, Cheyenne, and Lee E. Christian, P.C., Fort Collins, CO, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., Mary Beth Wolff, Asst. Atty. Gen., for appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY and TAYLOR, JJ.

THOMAS, Justice.

The primary issue that must be addressed in this case is whether the evidence presented at trial justifies the conviction of Curtiss Jansen (Jansen) of first degree murder under the felony murder doctrine. The jury found Jansen guilty of first degree murder, and his main argument to this court is that the evidence does not suffice to implicate him in any felony associated with the death of the victim. Jansen also incorporates other claims of error including prejudicial jury in-

structions; the introduction of an involuntary confession; the denial of his motion for a bill of particulars; error in preventing counsel from participating in the voir dire examination of jurors so as to uncover bias; prejudicial conduct on the part of the trial judge; and denial of effective assistance of counsel. We have scrutinized the evidence in the light of our prior felony murder cases, particularly *Bouwkamp v. State*, 833 P.2d 486 (Wyo. 1992). We are satisfied the evidence is sufficient, and there was no other reversible error. The judgment and sentence of the trial court is affirmed.

In the Brief of Appellant, the following issues are asserted:

I. Was there sufficient evidence to convict Jansen?

II. Did numerous fundamental errors in instructing the jury prejudice Jansen?

III. Was Jansen's confession involuntarily given?

IV. Was the trial court's denial of Jansen's motion for bill of particulars error?

V. Did the trial court err in preventing defense counsel an opportunity during voir dire to uncover potential juror bias?

VI. Did the trial judge's prejudicial conduct deny Jansen a fair trial?

VII. Was Jansen denied effective assistance of counsel?

In its Brief of Appellee, the State of Wyoming states the issues to be:

I. Did sufficient evidence exist to convict appellant?

II. Was appellant's confession voluntary?

III. Did appellant receive a fair trial?

The doctrine of felony murder is not novel in this jurisdiction. *Bouwkamp; Roderick v. State*, 858 P.2d 538 (Wyo.1993); *Cook v. State*, 841 P.2d 1345 (Wyo.1992); *Garcia v. State*, 774 P.2d 623 (Wyo.1989); *Engberg v. State*, 686 P.2d 541 (Wyo.1984), *cert. denied*, 469 U.S. 1077, 105 S.Ct. 577, 83 L.Ed.2d 516 (1984); *Osborn v. State*, 672 P.2d 777 (Wyo. 1983), *cert. denied*, 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984); *Murray v. State*, 671 P.2d 320 (Wyo.1983); *Cloman v.*

* Retired July 6, 1994.

*State,* 574 P.2d 410 (Wyo.1978); *Jones v. State,* 568 P.2d 837 (Wyo.1977); *Richmond v. State,* 554 P.2d 1217 (Wyo.1976) *reh'g denied,* 558 P.2d 509 (1977); *State v. Lindsay,* 77 Wyo. 410, 317 P.2d 506 (1957); *State v. Best,* 44 Wyo. 383, 12 P.2d 1110 (1932); *Clay v. State,* 15 Wyo. 42, 86 P. 17 (1906). Of these several cases, a number of them, like this case, involved the offense of robbery as the underlying offense. *Bouwkamp; Cook; Engberg; Osborn; Cloman; Jones; Richmond; Best; Clay.* There exists a relative wealth of precedent against which this case may be weighed.

From this series of cases, these applicable principles may be garnered. First, the sequence of events is not important so long as the homicide occurs in what can be identified as one continuous transaction. *Bouwkamp; Cloman.* Second, in *Jones,* 568 P.2d at 846, we said:

> If two or more persons are jointly engaged in the perpetration of or an attempt to perpetrate a robbery, and a human being is killed during its commission by any one of the persons so jointly engaged, then each of the offenders are equally guilty of the homicide.

Third, in *Lindsay,* 317 P.2d at 510, we said there are:

> [T]hree sets of circumstances under which a person may properly be convicted of the crime of murder in the first degree: First, if he commits the act purposely and with premeditated malice; second, if he commits the act in the perpetration of certain specified other crimes; and third, if he commits the act in the **attempt** to perpetrate these specified crimes.

Summarized, the applicable rule here is, if Jansen and his cohorts were jointly engaged in the perpetration of a robbery and the victim was killed in the course of a continuous transaction encompassing the robbery, Jansen is subject to conviction and punishment for first degree murder.

The events that led to the death of the victim in this case are aptly captured in *Osborn,* 672 P.2d at 794 (emphasis added):

> Each felony murder involves not one but two crimes of violence. Its victims are the innocent. **It is a crime of wanton and loathsome predators** on a law-abiding society and recognized by the legislature as such.

Mark Thompson (Thompson), one of the participants in the crime, cooperated with the State and testified at trial. His testimony establishes the background of the charges against Jansen.

The record discloses Jansen, Thompson, and David Hightower (Hightower) became acquainted in March of 1992. They met at two facilities in Denver that catered to transient and homeless people, the Blake Street Mission and the St. Francis Shelter. About the middle of March of that year, they arrived in Casper on their way to Seattle, Washington, where they hoped to get work on a fishing boat. Two of them received food stamps in Casper which they sold for cash, at half their value, using the proceeds to buy liquor.

By March 26, 1992, the three had become acquainted with the victim, another homeless person. The four men spent that day drinking, eating, and sharing drugs at a site on the bank of the North Platte River known as Hobo Jungle. Their drinking was extensive and included two quarts of beer, a fifth of vodka, and two pints of vodka. Thompson testified each of them had injected vodka intravenously that day. The victim was under treatment for psychotic illness, and he shared prescription drugs with the others, including Librium (a tranquilizer), Imipramine (an anti-anxiety, muscle-relaxant tranquilizer), and Lithium Carbonate (used for the treatment of manic depressive psychoses or bipolar affective disorders).[1]

At the inception of the events leading to the victim's death, Hightower began to encourage Thompson to kick the victim, while at the same time encouraging the victim to kick Thompson. An affray followed during

---

**1.** The description of the purposes for these several substances was provided by a physician who testified at trial.

which Hightower and Thompson kicked the victim in the head several times. Thompson testified Jansen sat on a rock, watching the beating of the victim while "laughing, pretty much enjoying himself." The victim apologized to his assailants and asked them to stop. They did stop, but later, when the victim apologized to Hightower again, Hightower flew into a rage. Hightower and Thompson resumed kicking and stomping on the victim's head until he was unconscious. Jansen remained in his vantage point on the rock watching.

After eight or ten kicks, Thompson stopped Hightower. Thompson then took the cigarette he was smoking and put it in the victim's pant pocket, "[j]ust to give him a hot seat." Thompson testified, at that point, the victim became semiconscious, and Hightower told the victim to give him his Arizona State University jacket or Hightower would beat him again. The victim removed the jacket and handed it to Hightower who in turn handed it to Jansen. Jansen then took the victim's backpack, emptied out its contents, and put his belongings into it. At the same time, Hightower went through the victim's wallet.

At that point, the victim again lapsed into unconsciousness. Thompson testified Hightower then stuffed some of the papers removed from the backpack up the victim's pant leg, and one of them lit the papers on fire. Thompson and Jansen each took hold of one of the victim's legs and dragged him on his back over the rocks so they could throw him in the river. This doused the fire and revived the victim. Hightower then threw a rock at the victim submerging him in the water. Thompson and Jansen joined in throwing rocks at the victim who was trying to reach the shore. When the victim did reach the shore, Hightower hit him squarely in the back with a rock and declared, "[w]e are going to kill you * * *." Thompson placed part of a wheel from a railroad car weighing fifty-four and one-half pounds of solid steel around the victim's neck as he lay partially submerged, but with his head out of the water. All three then proceeded to cover the victim with forty to fifty rocks which were estimated to weigh some 400 pounds.

They went back to their camp and continued to drink for about fifteen minutes. When they got up to leave, they could hear the "gargling" sound of the victim's breathing as they left.

Jansen's version of these events is gleaned from a statement given to investigating officers, together with his testimony at trial. From the witness stand, Jansen admitted he had watched the violence of the first beating by Thompson and even helped wipe the blood from the victim's head. He testified he had seen the victim being thrown into the river, and Hightower had asked him if he wanted the victim's jacket. He described the violence surrounding the second beating, and he did offer conflicting testimony with respect to the victim's Arizona State University jacket, testifying Hightower had traded a pint of vodka for the jacket. In his testimony, he claimed his recollection was primarily based upon what Thompson had told him about these events because he had been in an alcoholic blackout when they occurred.

From his statement, the following information is summarized. Jansen accepted the Arizona State University jacket, after Hightower asked him if he wanted it, and before Hightower threw the victim into the river. Jansen admitted he took the victim's backpack, emptied the contents on the ground, and put his belongings inside while the victim was being beaten. He related Hightower had told the victim they were going to kill him, and the victim said, "[d]on't kill me." In his statement he said:

> I was also throwing rocks at [the victim] from up on the bank. All three of us picked up a big rock. I could not help much because of my foot. Mark and David threw it on him. We kept throwing rocks on him until he was covered up. I could hear Brad breathing under the rocks, I did not think he was dead. I knew some of the rocks hit him in the head. I had went through his billfold after Brad was beat up and before he was thrown into the river.

The next day, an employee of the Wyoming Game and Fish Department found the victim's body and notified authorities. The investigation disclosed the victim's identity,

and that information led authorities to Jansen, Thompson, and Hightower. Jansen was arrested approximately a week later at 4:00 p.m., on April 2, 1992. He told the arresting officers he needed an insulin injection sometime before dinner because he was diabetic. At the police station, Jansen was advised of his constitutional rights, and he dictated a confession to a police officer, which Jansen then read, edited, and signed. After that, the officer took Jansen to the hospital for an insulin injection. Jansen was admitted to the hospital and was treated for his neglect of his diabetic condition.

Jansen was charged with first degree felony murder. He was convicted by the jury at his trial, and he was sentenced to imprisonment for life. Jansen appeals from that judgment and sentence.

Jansen contends the evidence presented to the jury was not sufficient to justify his conviction of felony murder. He asserts he did not commit a robbery, and the killing did not occur in the perpetration of any robbery. Our test for the sufficiency of the evidence is definitively articulated in *Geiger v. State,* 859 P.2d 665, 669 (Wyo.1993):

Our standard when reviewing for sufficiency of the evidence is well settled:

" '[T]his court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict.' " *Dangel v. State,* Wyo., 724 P.2d 1145, 1148 (1986), quoting from *Aden v. State,* Wyo., 717 P.2d 326, 327 (1986).

"[I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State * * *." *Broom v. State,* Wyo., 695 P.2d 640, 642 (1985) * * *.

*Roose v. State,* 759 P.2d 478, 487 (Wyo. 1988). *See also Glazier v. State,* 843 P.2d 1200, 1203 (Wyo.1992).

This rule is reiterated in *Bouwkamp.* This standard was adopted so our approach would match that used by federal courts in post-conviction review of state proceedings. *Dangel v. State,* 724 P.2d 1145, 1148 (Wyo.1986).

Jansen's first issue and argument attack the sufficiency of the evidence to convict him of felony murder. The information in the record must be compared with the felony murder doctrine as articulated in Wyo.Stat. § 6–2–101(a) (1988), which provides:

Whoever purposely and with premeditated malice, **or in the perpetration of, or attempt to perpetrate, any * * * robbery * * *** kills any human being is guilty of murder in the first degree. (Emphasis added.)

Since the crime of robbery was relied upon as the underlying felony, we must consider the definition found in Wyo.Stat. § 6–2–401 (1988):

(a) A person is guilty of robbery if in the course of committing a crime defined by W.S. 6–3–402 [larceny] he:

(i) Inflicts bodily injury upon another; or

(ii) Threatens another with or intentionally puts him in fear of immediate bodily injury.

The crime of larceny, incorporated within the definition of robbery, is defined in Wyo.Stat. § 6–3–402(a) (1988):

A person who steals, takes and carries * * * away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

Jansen contends he did not commit a robbery, and the victim's killing did not occur in the perpetration of any robbery.

More specifically, Jansen's arguments with respect to the sufficiency of the evidence include claims the evidence did not demonstrate he used force and fear in obtaining the victim's property; he could not be convicted as an accessory since no instructions on the theory of aiding and abetting were submitted to the jury; and any intent to rob was formed after the beating so Jansen did not possess the requisite intent at the time of the killing. The interpretation of the evidence offered in Jansen's brief is not supported by the record.

■ To establish the crime of felony murder in this case it was necessary to demonstrate the offense of robbery. Robbery is essentially larceny accompanied by force. *Goodwine v. State,* 764 P.2d 680, 682 (Wyo. 1988). Our analysis of the sufficiency of the evidence to demonstrate robbery is informed by *Cowell v. State,* 719 P.2d 211 (Wyo.1986); *Downs v. State,* 581 P.2d 610 (Wyo.1978); and *Newell v. State,* 548 P.2d 8 (Wyo.1976). Cowell was convicted of burglary and contended on appeal that the circumstantial evidence was insufficient to sustain his conviction. The crime of burglary encompasses an intent to steal, and the court held that Cowell's possession of stolen items together with other corroborative evidence demonstrating inculpatory circumstances was sufficient to sustain his conviction. We there said, concerning possession of the stolen goods:

> The most significant and material evidence of defendant's guilt is his possession of the stolen property. Possession is a strong circumstance tending to show guilt and only slight corroborative evidence of other inculpatory circumstances is required. *Orcutt v. State,* Wyo.1961, 366 P.2d 690, 692–3. While it may be otherwise elsewhere, in this jurisdiction, possession alone is insufficient in itself to convict. *Orcutt,* supra; *State v. Costin,* 1934, 46 Wyo. 463, 469, 28 P.2d 782, 783.

*Cowell v. State,* 719 P.2d 211, 215 (Wyo.1986) (*citing Newell v. State,* 548 P.2d 8, 13 (Wyo. 1976)).

In this case, there is no question Jansen had possession of property stolen from the victim. That is clear from Thompson's evidence and Jansen's statement.

We then return to the sequence of events which involve violence committed upon the victim, the acceptance of the Arizona State University jacket, and the taking of the victim's backpack. During the course of these events, Hightower announced, "I think we're going to kill [you] because your [sic] a pussy." All of this was followed by the participation of Jansen in throwing rocks at the victim and helping to bury him under them on the bank of the river. In *Newell,* 548 P.2d at 14, we said, "[i]t is a factfinder's

question whether explanation raises a doubt. * * * The trier of fact is not required to believe the defendant's explanation of possession." We are satisfied there was sufficient evidence to permit the jury to find Jansen participated in a robbery of the victim.

■ Still, Jansen contends "the unlawful act must be the proximate cause of death, or * * * death must be a probable consequence or the natural or necessary result of the unlawful act." He urges there is no logical link between the underlying felony and the murder. One element of robbery is the infliction of bodily injury upon another or threats that put him in fear of immediate bodily injury. When the bodily injury leads to death, the act becomes felony murder. In *Bouwkamp,* 833 P.2d at 491, we stated:

> Felony-murder is an unusual offense in that the death arising out of the robbery is purely an incident of the basic offense. It makes no difference whether or not there was an intent to kill. The statutory law implies all the malevolence found and necessary in the crime of first degree murder alone.

It would be difficult to conceive a more classic example of a case in which a killing occurs in a continuous transaction involving a robbery than the circumstances of this case. There, indeed, was more than sufficient evidence to find Jansen guilty of felony murder.

■ Jansen's claim he could not be convicted as an aider and abettor is erroneous. The jury was instructed:

### INSTRUCTION NO. 14

You are instructed that if two or more persons are jointly engaged in the perpetration of, or attempt to perpetrate a robbery, and a human being is killed during its commission by any one of the persons so jointly engaged, then each of the offenders is equally guilty of the homicide.

The state of the law regarding accomplice liability is correctly articulated in that instruction which is a direct quotation from *Jones,* 568 P.2d at 846. Furthermore, when two persons engage in a crime in which they are aiding and abetting each other, a previous understanding is not necessary in order

to render each of them accountable for the acts of the other. *Lujan v. State,* 423 P.2d 388 (Wyo.1967). In this case, Jansen, Hightower, and Thompson jointly engaged in the robbery and murder of the victim, and Jansen is guilty of that murder.

The second issue in Jansen's brief relates to claims of numerous errors in instructing the jury. These include the claims the instructions failed to establish a *mens rea* on Jansen's part in connection with the felony murder; the trial court committed plain error by not instructing as to the lesser included offenses of robbery and larceny; and the trial court improperly refused an instruction offered by Jansen which articulated the need for a nexus between the underlying felony and the charge of felony murder.

Jansen asserts the instructions as a whole imply, while premeditated murder involves a requisite mental state, the charge of felony murder does not. He also contends Instruction 14, quoted above, relieved the State of the burden of establishing *mens rea.* We do not perceive this characterization of the jury instructions as sound.

In a felony murder, the defendant is held strictly responsible for the killing. The requisite elements of first-degree murder, premeditation, deliberation, and malice are imputed in a felony murder by a conclusive presumption. *Richmond,* 554 P.2d 1217. "[T]he necessary intent to convict a person of felony-murder, under such a circumstance, must be associated with the attempted robbery, not the homicide whose necessary elements are implied by the statute." *Jones,* 568 P.2d at 844. In this case, the jury was instructed with respect to intent as follows:

### INSTRUCTION NO. 22

YOU ARE INSTRUCTED to constitute the crime charged there must be a union of two essential elements, an act forbidden by law and a specific intent.

Specific intent means more than the general intent to commit the act. To

prove a crime which involves specific intent, the prosecution must prove beyond a reasonable doubt:

(1) That the Defendant did the act charged; and

(2) That he did it with the specific intent described in the crime charged.

The specific intent in the crime charged, felony murder, is the intent to rob, and must be proved beyond a reasonable doubt as any other fact in the case.

The jury must have determined Jansen had the requisite intent to rob the victim. Thompson testified Jansen wanted the victim's jacket prior to the beating. He also testified that, after the second beating, "[Hightower] more or less said either you give me the jacket or you get another beating. And that is when [the victim] gave him the jacket. [Hightower] handed it right to [Jansen]. * * * [Jansen] reached over and took [the victim's] backpack." The prosecutor clearly inquired whether Jansen had the victim's permission to take the backpack or whether Jansen had bartered or traded liquor for the jacket and backpack. Thompson gave a negative answer to those questions. In his signed confession, Jansen admitted:

[Hightower] asked me if I wanted [the victim's] red Arizona jacket and I said, "Yes." Before [Hightower] threw him in the river he took his jacket and gave it to me. * * * I took [the victim's] back pack [sic] and dumped his stuff out and put my things into it. [Hightower] started telling [the victim] we were going to kill him.

The jury found Jansen guilty beyond a reasonable doubt which encompassed the intention to commit the robbery, the required *mens rea* for robbery, and participation in the felony murder.

Jansen's next argument with respect to the instructions to the jury is a claim of plain error for failure to instruct robbery and larceny are lesser included offenses of felony murder.[2] We have said in this regard:

included in the offense charged or of an attempt to commit either the offense charged or

2. Wyo.R.Crim.P. 31(c) provides, in pertinent part:
 *Conviction of lesser offense.*—The defendant may be found guilty of an offense necessarily

The rule in this state is clear that the trial court should only give such instructions as arise from the evidence and that when the evidence shows that the defendant is either guilty or not guilty of the higher grade of the offense, the court is not required to instruct on the lesser offense.

*Oldham v. State,* 534 P.2d 107, 109 (1975) (citations omitted).

In *Richmond,* 554 P.2d at 1233 (emphasis added), we also said:

There is no doubt whatsoever that death of the victim ensued during the course of the robbery. It would be a travesty on justice to allow a jury to even consider a minor offense of assault and battery. The homicide cannot be disassociated from the attempted robbery. If the defendant was incapable of entertaining an intent to commit the robbery, then he should have been acquitted. That is the only area in which intent is an issue. Intent is not an element in the homicide that was connected to the robbery. **We can see no reason for submitting the issue of any lesser offense when the evidence conclusively shows the defendant guilty of the highest degree homicide. While the jury might, if that question were submitted to them, return some verdict of a lesser crime, this does not require the court to invite them to do so by submitting to them a theory of the case not rationally supported by the evidence.**

■ Jansen specifically requests that the court "reconsider [our] ruling in *Richmond* as it might relate to [Jansen's] argument that robbery and larceny are lesser included offenses to the crime of felony-murder/robbery." Jansen contends *Richmond* held manslaughter is not an offense necessarily included in robbery and, therefore, in felony murder. We have considered this issue, but our conclusion is that the test not only includes the elements of the underlying robbery, that is robbery and larceny, but the test also includes "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Richmond,* 554 P.2d at 1232. The offering of the underlying offense as a lesser included

an offense necessarily included therein if the

offense would simply beg that question since, if Jansen were found guilty of the robbery, he could not rationally be acquitted of murder. We hold a bright line rule is appropriate in the context of felony murder, and the statutory definition does not logically permit the giving of any instruction on any lesser included offense with respect to felony murder. To rule otherwise would unnecessarily depreciate the offense of felony murder.

A brief review of this record demonstrates Hightower and Thompson actually kicked the victim's head numerous times causing blunt force trauma which was determined by the coroner to be a cause of death. Jansen participated in piling rocks on the victim which lead to the compressive asphyxia, a major contributor to the cause of death. More importantly, the robbery actively was committed by both Jansen and Hightower. Jansen was one of three persons jointly engaged in the perpetration of a robbery in which the victim was killed. In this instance, the robbery cannot be disassociated from the murder, and there was no requirement that the offense of robbery be submitted as a lesser included offense.

■ Jansen's next argument, with respect to jury instructions, relates to the refusal of the court to give requested instruction "A." That instruction reads:

JURY INSTRUCTION NO. A

YOU ARE INSTRUCTED that to warrant a conviction for homicide, you as a juror must find beyond any reasonable doubt that the decedents [sic] death was the natural and probable consequence of an unlawful act by Curtiss Jansen, and not the result of an independent intervening cause in which Curtiss Jansen did not participate, and which he could not foresee. If you are not convinced beyond a reasonable doubt that the act of the accused was not the proximate cause of the death for which he is being prosecuted, but that another cause intervened with which he was in no way connected, and but for this superven-

attempt is an offense.

ing element death would not have occurred, you must acquit Curtiss Jansen.

We do not understand this concept has any materiality in a felony murder case. A defendant in such a case is strictly responsible for a killing which occurs in connection with the perpetration of a felony. The proposed instruction was designed to insulate Jansen from culpability by argument that Hightower and Thompson actually killed the victim. On the basis of our prior cases, that approach has no place in the felony murder doctrine.

■ Much the same may be said of Jansen's contention the court erroneously refused to give his requested instruction "B." It reads:

### JURY INSTRUCTION # B

The Government in it's [sic] prosecution of this case must prove beyond a reasonable doubt that the combination of drugs and alcohol ingested by decedent [the victim] did not cause his death. If any reasonable belief exists in your mind as a Juror that the combination of drugs and alcohol in the decedent's system caused his death, this is an absolute defense to the charges and you must find Curtiss Jansen not guilty.

Jansen asserts he is entitled to an instruction affirmatively stating his theory of the case. In *Bouwkamp*, 833 P.2d at 490 (citations omitted), we said in this regard:

The instruction must sufficiently inform the court of the defendant's theory and must be supported by competent evidence. * * * However, there is another fundamental condition precedent which was not met by the offered instruction. The instruction must in the first instance be a proper theory of the case, or theory of defense, instruction. That is, the offered instruction must present a defense recognized by statute or case law in this jurisdiction.

The proffered instruction articulated a theory that the victim's death was due to his consumption of drugs and alcohol and, by implication, not the beatings. The coroner did testify the consumption of alcohol and drugs was a minor contributing factor to the death. It could not have been identified as an exclusive cause of death under the evidence and, consequently, the proffered instruction is not supported by competent evidence. Furthermore, it is not, under the *Bouwkamp* holding, a defense recognized by statute or case law. It is put in issue by the plea of not guilty and, certainly, could be argued to the jury, but it is nothing more than an effort to have the court make the argument for Jansen.

■ Next, Jansen attacked the voluntariness of his confession. He recognizes statements are voluntary if they are "the product of a free and deliberate choice, rather than intimidation, coercion, or deception." *Rude v. State*, 851 P.2d 20, 23 (Wyo.1993). There is no evidence to indicate Jansen's statement was made under any form of intimidation, coercion, deception, threat, violence, brutality, duress, pressure, or promise of any kind. Jansen argues, since he did not receive an insulin injection until after 7:30 p.m. on the day of his arrest, he was concerned about a diabetic emergency and, thus, duress was present with respect to his five-page confession.

The evidence is clearly contrary to this contention. Jansen's expert physician witness testified about the external symptoms of a diabetic emergency which are shortness of breath, anxiety, confusion, and, ultimately, unconsciousness or diabetic coma. The same witness testified Jansen's medical records from his admission to the hospital demonstrated he did not display confusion; was not hyperventilating; was not nauseated, vomiting, or having any abdominal pain; and was not in any severe ketoacidosis. On the contrary, the emergency room doctor concluded Jansen scored thirty out of thirty on a full stem mental evaluation at the time of his admission to the hospital. He was mentally alert and capable of answering questions and responded appropriately.

Further, the arresting police detective testified he was prediabetic. Because of this condition and the diabetic condition of several family members, he was familiar with symptoms displayed by a person suffering from either high glucose or low glucose level as a result of diabetes. The detective testi-

fied Jansen did not exhibit any signs of physical distress. He determined Jansen's current physical condition by asking Jansen how he was feeling and if he needed insulin right away. He purposely incorporated mistakes in Jansen's dictated confession and requested Jansen to correct any mistakes and initial them. "That way I wouldn't have to worry about him skipping through pages, that he read every single word." Jansen did correct and initial changes. Both the detective and Jansen testified Jansen was not threatened during the interview, nor was he promised any privileges if he discussed the matter. Jansen did not request the assistance of a lawyer, nor ask that the interview be concluded.

Jansen's testimony does not indicate a diabetic emergency either. He was asked, "what kind of shape" he was in when he was arrested, and he answered, "I felt better. Mostly I was just scared, * * *." He stated the day of his confession he was in a slight diabetic emergency but not in any kind of physical distress. He agreed the detective had treated him nicely and didn't pressure or threaten him. He conceded he was advised of his constitutional rights; understood them; and waived them voluntarily. Under the test of the totality of the circumstances surrounding his interrogation, Jansen knowingly, voluntarily, and intelligently provided the inculpatory statement, free from intimidation, coercion, duress, or deception.

▮▮▮ In his fourth issue, Jansen complains about the denial by the trial court of his motion for a bill of particulars. He asserts the court committed an abuse of discretion that prejudiced his defense.

A bill of particulars, as provided for in Rule 9, W.R.Cr.P. * * * [currently Rule 7, W.R.Cr.P.], is not a part of the information and does not change the offense charged. It is designed to make more specific the general allegations in the information to enable the defendant to prepare his defense and avoid being surprised at the trial.

*Booth v. State*, 517 P.2d 1034, 1036 (Wyo. 1974).

The State argues a bill of particulars is only available with respect to indictment, but this is not a correct position. A bill of particulars can be sought with respect to informations. *Stewart v. State*, 724 P.2d 439 (Wyo. 1986); *Booth*.

We do agree with the State's contention at the motion hearing, however, that a bill of particulars is inappropriate for obtaining evidence, facts, theories, and strategies. Jansen's motion for a bill of particulars inappropriately asked for evidence, facts, and theories. The court correctly denied this motion, saying:

The Affidavit filed, I think, clearly informs you that they are certainly going on an aiding and abetting, or participation, one or the other, or both. There are two or three people apparently involved. I don't see where any surprise is coming, Mr. Sedar. I think you can figure that out.

The cases cited in 42 C.J.S. *Indictments and Informations* § 137 (1991), stand for the proposition that the purpose of a bill of particulars is:

[T]o apprise defendant of the essential elements of the crime with which he is charged, to enable him to prepare his defense and to avoid surprise at the trial, to protect against double jeopardy, and to compel the prosecution to observe certain limitations in offering evidence.

We do not perceive Jansen had any confusion about the elements of the crime with which he was charged; he was unable to prepare a defense; there was any prospect of surprise at the trial; he needed any protection against double jeopardy; and the bill of particulars would have assisted him in providing appropriate limitations on the evidence to be received. There was no prejudice to Jansen by the denial of the bill of particulars in this case.

▮▮ In his fifth claim of error, Jansen argues an abuse of discretion by the trial court when it prevented the defense counsel from an appropriate opportunity to uncover juror bias during voir dire. Our criminal rules provide:

*Examination of jurors.*—After the jury panel is qualified the judge may question

prospective jurors. Thereafter, the parties, or their attorneys, may conduct the examination of prospective jurors, but such examination shall be under the supervision and control of the judge, and the judge may conduct such further examination as the judge deems proper. The judge may assume the examination if counsel fail to follow this rule. If the judge assumes the examination, the judge may permit counsel to submit questions in writing. The examination shall be on the record.

> (1) The only purpose of the examination is to select a panel of jurors who will fairly and impartially hear the evidence and render a just verdict.

WYO.R.CRIM.P. 24(c).

The record discloses the parties submitted questions for the judge to ask during voir dire. Each counsel interjected comments as necessary during voir dire, and there was careful questioning of each juror with respect to knowledge about the case and prejudice. The record does not disclose any juror bias, nor does Jansen make any specific claim to demonstrate prejudice on the part of the jury or any particular juror. We conclude voir dire was appropriately conducted within the discretion of the trial court.

 Jansen then argues the conduct of the trial judge resulted in the denial of a fair trial. We have said in a civil context:

> The trial court acts as a referee of the contest between the parties. It should be fair and impartial as between the parties and their attorneys and allow them considerable freedom in the presentation of their respective cases in their own way.
>
> * * * * * *
>
> Although we have said that the court must assiduously avoid any appearance of partiality, we recognize also that the court must be firm, maintain control of the proceeding and **assure that what occurs is within the rules of law and procedure to the end that the jury receives and considers only lawful evidence conducive to its arriving at a just result.** * * * [A]lthough where circumstances reasonably necessitate, it is within the province of the trial court to admonish or rebuke counsel.

* * * Maintaining a semblance of order in those trials is left largely to the trial court and is not a basis for reversal absent a clear showing of prejudice.

*McCabe v. R.A. Manning Const. Co. Inc.,* 674 P.2d 699 at 708, 709 (Wyo.1983) (emphasis added).

The test for the clear showing of prejudice does not relate to the number of rulings in favor of each counsel, but rather assurance "that what occurs is within the rules of law and procedure to the end that the jury receives and considers only lawful evidence conducive to its arriving at a just result."

Our examination of this record discloses the trial court ruled properly on issues of law, evidence, and procedure with respect to each occurrence. The court rebuked defense counsel only after he improperly marked on an exhibit during closing argument; he was cautioned not to mark on exhibits in the future by the trial court; and he then continued to refer to the mark which caused a distortion of the exhibit. Under these circumstances, the trial court was required to rebuke counsel to assure the jury was not swayed by the distorted evidence. We do not accept Jansen's claim he was prejudiced by the actions of the trial court in this instance.

 Finally, Jansen argues he was denied effective assistance of counsel because of deficient representation. We follow the standard articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). In this regard, we have said:

> The standard by which we determine whether assistance of counsel is effective is one of reasonableness. That is, we must determine whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. Under this standard, appellant must demonstrate
>
> " * * * first * * * that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning

as the 'counsel' guaranteed [appellant] by the Sixth Amendment. Second, [appellant] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable. * * * "

" * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."

*Frias v. State,* 722 P.2d 135, 145, 147 (Wyo. 1986) (citations omitted).

Jansen contends his defense lawyer failed to offer an appropriate theory of the case instruction; to offer a lesser included offense instruction; to offer appropriate felony murder instructions; and to object to other instructions in the case. He contends this failure disrupted the adversarial process. He also argues his counsel adopted a tactic that no reasonably competent attorney would have adopted under the circumstances.

We are satisfied from our examination of the record that Jansen's counsel met the test we have adopted. Jury instructions were presented, and he lodged objections to the rejection of his theory of the case instruction and his proximate cause instruction. He was an active advocate at every stage of this case. In *Osborn,* 672 P.2d at 796, we reiterated a quotation from *Hoskovek v. State,* 629 P.2d 1366, 1367, 1368 (Wyo.1981) (citations omitted):

A criminal defendant is entitled to an "effective" assistance of counsel. The standard which we have established to determine whether or not the assistance of counsel is effective is one of "reasonableness." Is the assistance rendered by counsel that which would reasonably be rendered by a reasonably competent attorney under the facts and circumstances of the case? If it is, it is effective. If it is not, it is ineffective. The burden rests upon appellant to establish the ineffectiveness of counsel's assistance inasmuch as there is a presumption that counsel is competent and that he performed his duty.

* * * * * *

At page 1196 of *Galbraith v. State,* [Wyo.] 503 P.2d [1192 (1972) ], we quoted the following from *United States v. Rubin,* 433 F.2d 442, 444 (5th Cir.1970), *cert. denied,* 401 U.S. 945, 91 S.Ct. 961, 28 L.Ed.2d 228 [ (1971) ]:

"Taking a hindsight view, many convicted defendants may condemn their counsel as ineffective. But the command of the constitution is for a battle, not a victory, as Judge Goldberg pointed out for us in *Odom v. United States,* 5 Cir., 1967, 377 F.2d 853, 859. The standard was articulated by Judge Wisdom in *MacKenna v. Ellis,* 5 Cir., 1960, 280 F.2d 592, 599: 'We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.' We have never deviated from these principles. * * * "

Hindsight on the part of appellate counsel demonstrates he might have argued differently and would have presented a different theory of the case. That does not demonstrate trial counsel was ineffective.

We add a final comment with respect to the claim of ineffective assistance of counsel. Jansen attached to his brief an affidavit from one of his defense attorneys in which deficiency with respect to jury instructions was admitted and in which there was a purported summary of jury comments after the verdict. Jansen endeavored to supplement the trial record with this affidavit, but that motion was properly denied. The affidavit is not part of the record in this case, and we have no reason to speculate about what occurred during jury deliberations or to frame a different result based upon the affidavit. We perceive the offering of such an affidavit as

broaching upon unethical conduct, and we strike the affidavit from the brief.

We are satisfied there was sufficient evidence to find Jansen guilty of felony murder; the jury instructions were fair and nonprejudicial; Jansen's confession was voluntary; the court properly denied the motion for a bill of particulars; the jurors were adequately examined during voir dire; the trial judge did not act in any prejudicial manner towards defense counsel; and Jansen received effective assistance of counsel. We find no reversible error in the proceedings in the trial court. We affirm the jury conviction and the judgment and sentence of the trial court.