David HIGHTOWER, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 94–151.

Supreme Court of Wyoming.

Aug. 21, 1995.

---

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, and Deborah Cornia, Appellate Counsel; and Maynard D. Grant of Grant & Newcomb, for appellant.

Joseph B. Meyer, Attorney General; Sylvia Lee Hackl, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Mary Beth Wolff, Senior Assistant Attorney General, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The major question to be resolved in this appeal is whether error occurred in permitting the Information to be amended prior to the preliminary examination. David Hightower (Hightower) appeals from his conviction for first degree murder and felony murder. He also contends the evidence is not sufficient to sustain his conviction of first degree murder on the theory of premeditated murder or the theory of felony murder, and the trial court erred in refusing to give requested instructions as to lesser included offenses of felony murder. Hightower's claims of error with respect to the sufficiency of the evidence to sustain the verdict of felony murder and the refusal to instruct on lesser included offenses of felony murder are resolved by our decision in *Jansen v. State*, 892 P.2d 1131 (Wyo.1995). We hold there was no error attributable to the amendment of the Information, and there was sufficient evidence to sustain the verdict of premeditated murder. Hightower's Judgment and Sentence is affirmed.

In the Brief of Appellant, Hightower states the following issues:

I. Whether the conviction for premeditated first degree murder was supported by sufficient evidence.

II. Whether the conviction for felony murder was supported by sufficient evidence.

III. Whether the trial court erred in refusing to instruct the jury on lesser included offenses to felony murder.

IV. Whether the trial court erred in allowing the State to amend the Information.

In its Brief of Appellee, the State of Wyoming sets forth only two issues:

I. Whether sufficient evidence existed to support Appellant's conviction for premeditated first degree murder and for felony murder?

II. Whether the trial court erred by declining to instruct the jury on the lesser offenses of aggravated robbery, robbery and larceny?

During March of 1992, Hightower became acquainted with Curtiss Jansen (Jansen) and Mark Thompson (Thompson) at the Blake Street Mission and the St. Francis Shelter in Denver, Colorado. About the middle of March, the three came to Casper, allegedly on their way to Seattle, Washington to obtain work on a fishing boat. Hightower and Thompson obtained food stamps in Casper, which they sold for cash (the going value was fifty percent of the face value of the food stamps), and they used the money to purchase liquor.

While he was detained in jail in Casper for public intoxication, Hightower became acquainted with the victim. Hightower and the victim were released from custody with the proviso they leave town within a specified time frame. The victim became acquainted with Thompson and Jansen when he went to their motel room in Casper to advise them Hightower was in jail. On the fatal day, March 26, 1992, these four spent most of the day drinking, eating, and sharing drugs at a point on the bank of the North Platte River known as Hobo Jungle. They not only drank extensively, but Thompson testified each of them injected vodka intravenously during the day. The victim, who was under treatment for psychotic illness, shared his prescription drugs with the others.

Jansen and Hightower left for a short time to check on Jansen's food stamps. While they were gone, the victim told Thompson that Hightower had told the victim to beat Thompson. At about this time, Hightower and Jansen returned, and the events leading to the victim's death commenced. When Hightower heard about the threats made by the victim to Thompson, Hightower kicked the victim in the face so hard he knocked him to the ground. Hightower then encouraged Thompson to kick the victim but, at the same time, he was encouraging the victim to kick Thompson. The victim was kicked several times in the head by both Hightower and Thompson. The assault was stopped when the victim apologized to Hightower and Thompson and asked them to stop kicking him. When the victim apologized to Hightower a second time, Hightower became enraged. Hightower and Thompson resumed kicking and stomping on the victim's head until he was unconscious.

After eight to ten kicks, Thompson stopped Hightower. Thompson then took the cigarette he was smoking and put it in the victim's pant pocket to give him a "hot seat." Thompson testified the victim became semiconscious after the hot seat was administered, and Hightower then ordered the victim to give him his Arizona State University jacket or Hightower would beat him some more. The victim removed the jacket and handed it to Hightower who, in turn, handed it to Jansen. Jansen then took the victim's backpack, emptied it of its contents, and put his own belongings in it. While Jansen was doing that, Hightower went through the victim's wallet.

The victim again lapsed into unconsciousness. Thompson testified Hightower, at that point, stuffed some of the papers removed from the backpack up the victim's pant leg, and one of them lit the papers on fire. Thompson and Jansen then dragged the victim by his legs over the rocks so they could throw him in the river. This doused the fire and revived the victim. As the victim was wading back to shore, Hightower threw a large rock, hitting the victim in the head. Thompson and Jansen then joined in throwing rocks at the victim while he still was trying to reach the shore.

Ultimately, the victim did reach the shore, and Hightower then hit him squarely in the back with a rock declaring, "we are going to kill you * * *." Thompson then placed a fifty-four and one-half pound solid steel, partial railroad car wheel around the victim's

neck as he lay partially submerged with his head out of the water. The three then covered the victim with forty to fifty rocks which were estimated to weigh 400 pounds. They went back to their camp and continued to drink for about fifteen minutes. When they left, they could hear the "gargling" sound of the victim's breathing.

The following day, an employee of the Wyoming Game and Fish Department discovered the victim's body and notified authorities. Investigation determined the victim's identity, and that information then led the authorities to Jansen and Thompson. Hightower had left Casper, and he was arrested in Seattle, Washington on April 1, 1992.

Hightower initially was charged with first degree felony murder and with second degree murder. When he was presented to the county court at his initial appearance, on April 5, 1992, the district attorney amended the Information so that Hightower was charged with premeditated first degree murder and first degree felony murder. After a trial, he was convicted by the jury which found him guilty of first degree murder under both theories by separate verdicts. Hightower was sentenced to life imprisonment in the state penitentiary, and his appeal is from that Judgment and Sentence.

Because it is a foundational matter, we first address Hightower's complaint of error with respect to amendment of the Information. At the time Hightower was charged, WYO.R.CRIM.P. 3(d) provided:

> *Amendment of information or citation.*—The court may permit an information or citation to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

The original Information, filed on April 1, 1992, charged Hightower with felony murder in the course of a robbery, in violation of WYO.STAT. § 6–2–101 (1988), and second degree murder, in violation of WYO.STAT. § 6–2–104 (1988). On April 5, 1992, an Amended Information was filed in which Hightower was charged in one count with violation of WYO.STAT. § 6–2–101 by committing premedi-

tated first degree murder and also by committing felony murder. This amendment antedated the preliminary examination in the county court.

In an effort to distance himself from a position that was singularly unsuccessful in the trial court, Hightower contends the amendment of the Information in the county court was unlawful. Hightower confesses the trial counsel attacked the amendment in a "Motion to Elect," arguing the Amended Information was multiplicious although, clearly, counsel was urging that it was duplicitous. The trial court denied the motion to elect on the ground that, historically, first degree murder and felony murder could be charged together. The Brief of Appellant concedes this point:

> Hightower acknowledges that the State may charge a defendant with committing both premeditated first degree murder and felony murder. *Bouwkamp v. State*, 833 P.2d 486 (Wyo.1992); *Price v. State*, 807 P.2d 909 (Wyo.1990 [sic]); *Cloman v. State*, 574 P.2d 410 (Wyo.1978). It is his position, however, that under the rationale of *McInturf* [sic], the State may not bring both acts in a single count, lest it run counter to the prohibition against duplicitous charging.

In relying upon *McInturff v. State*, 808 P.2d 190 (Wyo.1991), Hightower contends the Amended Information charged an additional and different offense.

Hightower ignores some obvious distinctions articulated in *McInturff*. There, the court explained the challenged amendment came after McInturff's preliminary hearing and did charge different offenses in violation of WYO.R.CRIM.P. 9(c) (the predecessor of WYO.R.CRIM.P. 3(d)). The amendment to the Information charging Hightower simply charged alternative methods of committing the same crime. Further, the *McInturff* court pointed out the Amended Information combined separate and independent offenses into one count. The gravamen of first degree murder is death of a person, and charging the defendant with alternative ways of committing the same crime does not result in a duplicitous pleading. *McInturff* cites *San-*

*ville v. State,* 553 P.2d 1386, 1390 (Wyo.1976), in which this court said:

> Turning to Sanville's second contention, the law generally, and this is the law in Wyoming, is that an information may be amended so long as the amendment is not prejudicial to the defendant and does not charge a different offense. Rule 9(c), W.R.Cr.P.; and *State v. Kusel,* 29 Wyo. 287, 213 P. 367 (1923). This offense stayed the same * * *. The charge was the same, no different events were involved, and since Sanville previously had been advised of this particular property, clearly there was no prejudice to him.

■ Hightower argues prejudice because of the duplicitous pleading. Clearly, there were not multiple offenses charged in this Information, and Hightower offers no other explanation of prejudice. He contends an additional and different offense was charged, but that is not true. We find no error in the amendment of the Information.

■ We can deal readily with Hightower's claim of error in the failure to instruct on lesser included offenses of felony murder. The argument is substantially identical to that presented to this court in *Jansen* where we said, after quoting from *Richmond v. State,* 554 P.2d 1217, 1233 (Wyo.1976), *reh'g denied,* 558 P.2d 509 (1977).

> We hold a bright line rule is appropriate in the context of felony murder, and the statutory definition does not logically permit the giving of any instruction on any lesser included offense with respect to felony murder. To rule otherwise would unnecessarily depreciate the offense of felony murder.

*Jansen,* 892 P.2d at 1139.

We turn to the claims by Hightower that the evidence is not sufficient to sustain either the verdict of premeditated murder or felony murder. In *Jansen,* 892 P.2d at 1136, we set forth the standard for review of the sufficiency of the evidence:

> Our test for the sufficiency of the evidence is definitively articulated in *Geiger v. State,* 859 P.2d 665, 669 (Wyo.1993):
>
>> Our standard when reviewing for sufficiency of the evidence is well settled:
>>
>>> " '[T]his court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict.' " *Dangel v. State,* Wyo., 724 P.2d 1145, 1148 (1986), quoting from *Aden v. State,* Wyo., 717 P.2d 326, 327 (1986). "[I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State * * *." *Broom v. State,* Wyo., 695 P.2d 640, 642 (1985) * * *.
>>
>> *Roose v. State,* 759 P.2d 478, 487 (Wyo. 1988). *See also Glazier v. State,* 843 P.2d 1200, 1203 (Wyo.1992). This rule is reiterated in *Bouwkamp.* This standard was adopted so our approach would match that used by federal courts in post-conviction review of state proceedings. *Dangel v. State,* 724 P.2d 1145, 1148 (Wyo.1986).

It is by this standard we examine Hightower's second issue in which he addresses the sufficiency of the evidence to sustain the verdict of felony murder. The evidence must be evaluated in the context of the elements of felony murder, which are set forth in WYO. STAT. § 6–2–101 (1988):

> (a) Whoever * * * **in the perpetration of, or attempt to perpetrate, any** * * * **robbery** * * * kills any human being is guilty of murder in the first degree. (Emphasis added.)

The underlying felony relied on in this case is the crime of robbery. It is defined in WYO. STAT. § 6–2–401 (1988):

> (a) A person is guilty of robbery if in the course of committing a crime defined by W.S. 6–3–402 [larceny] he:
>
>> (i) Inflicts bodily injury upon another; or
>>
>> (ii) Threatens another with or intentionally puts him in fear of immediate bodily injury.

The crime of larceny is defined in WYO.STAT. § 6–3–402(a) (1988):

A person who steals, takes and carries, * * * away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

Hightower questions whether the evidence established that the killing and the felony were part of a continuous series of connected acts. He argues the fatal injury was inflicted before the felony was undertaken or contemplated. This is a parallel argument to that espoused by Jansen in his appeal. It confronts significant obstacles in the law of prior cases.

This court, like the courts in other states, has ruled the time sequence of the felony and the murder is not important as long as the evidence and its inferences demonstrate one continuous transaction. In *Cloman v. State*, 574 P.2d 410, 420 (Wyo.1978), we said:

One of the leading cases evoking that principle is *Commonwealth v. Stelma*, 327 Pa. 317, 192 A. 906, 908 (1937), which says in part:

" * * * The defendant's argument that the intention to rob originated subsequent to the assault upon the deceased need not be seriously considered in view of the verdict of the jury. Moreover, even though such were the case, it is immaterial when the design to rob was conceived, if the homicide occurred while defendant was perpetrating or attempting to perpetrate a robbery. Where the killing occurs in the perpetration of any of the crimes specifically named in the statute referred to, the intent to kill is immaterial. * * * "

*Stelma* has been followed in *Commonwealth v. Slavik*, 437 Pa. 354, 261 A.2d 583 (1970), in which the court said in effect that if a homicide occurs in the perpetration of a robbery, a conviction of first degree murder will be sustained "regardless of when the design to rob was conceived."

We explained this principle in *Bouwkamp v. State*, 833 P.2d 486, 492 (Wyo.1992), stating:

While the sequence of events is not significant, their interrelationship is. A specific connection is required: the murder must occur in the performance of the felony for conviction of felony murder under Wyo.Stat. § 6-2-101 (June 1988).

█ The jury was presented with evidence that Hightower did inflict bodily injury upon the victim and did threaten him with, or put him in fear of, immediate bodily injury to steal, take and carry away property belonging to the victim. Hightower took the victim's coat after beating the victim and threatening to beat him some more if he did not relinquish his coat. The evidence also established the victim's backpack was taken by Jansen, and Hightower went through his wallet. The requisite elements of robbery were established.

In *Cloman*, 574 P.2d at 420, we also quoted from *People v. Jentry*, 69 Cal.App.3d 615, 138 Cal.Rptr. 250, 258 (1977), a case involving facts similar to this case:

" * * * We have concluded, however, that the fact that the victim was dead does not render inapplicable the felony-murder doctrine when, as here, the blows causing the death and the maiming took place as part of one continuous transaction."

We have held the determination of the existence of a "continuous transaction" is a question for the jury. *Bouwkamp*, 833 P.2d at 492.

█ The victim died from blunt force trauma and compressive asphyxia. The jury was free to conclude from this evidence that the victim's death occurred as a result of the continuous beatings which were linked to the taking of the victim's property. Under our test, the evidence was more than sufficient to permit the jury to find Hightower guilty of felony murder. This conclusion is the same as that reached in *Jansen*.

The sufficiency of the evidence to sustain the verdict of felony murder makes it unnecessary to consider the sufficiency of the evidence to sustain the verdict of premeditated murder in view of the separate verdicts as to premeditated murder and felony murder in this case. *See Bouwkamp; Price v. State*, 807 P.2d 909 (Wyo.1991); and *Cloman*. Hightower does argue the evidence is not sufficient to sustain the verdict of premeditated murder, however, and the case does serve as an opportunity to apply the analysis

of the evidence adopted in *Bouwkamp*. We said there:

> To clarify what is required on appeal to sustain a conviction of first degree murder and to analyze the evidence presented in this instance, we adopt the three-part framework articulated by the California Supreme Court, applied in California and other jurisdictions. *See People v. Bloom*, 48 Cal.3d 1194, 774 P.2d 698, 705–07, 259 Cal.Rptr. 669, 676–78 (1989); *Williams*, 285 N.W.2d [248] at 268 [(Iowa 1979)]; *Longoria v. State*, 99 Nev. 754, 670 P.2d 939, 941 (1983). *See also*, 2 LaFave & Scott, *supra*, § 7.7(a) at 239. We offer the framework verbatim:
>
>> Evidence sufficient to sustain a finding of premeditation and deliberation "falls into three basic categories: (1) facts about * * * what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3) would * * * support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed'; (3) facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take [the] victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)."
>
> *People v. Crandell*, 46 Cal.3d 833, 760 P.2d 423, 441, 251 Cal.Rptr. 227 (1988) (quoting *People v. Anderson*, 70 Cal.2d 15, 447 P.2d 942, 949, 73 Cal.Rptr. 550, 557 (1968)) (citations omitted).
>
>> [V]erdicts of first degree murder typically [are sustained] when there is evidence of all three types and otherwise require at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3).

*Bouwkamp*, 833 P.2d at 494–95.

In *Bouwkamp*, 833 P.2d at 493, we reiterated the meaning of premeditation:

> It [premeditation] is the "thinking over, deliberating upon, weighing in the mind beforehand, resulting in a deliberate intention to kill which constitutes the killing murder in the first degree." *Parker v. State*, 24 Wyo. 491, 502, 161 P. 552, 555 (1916). Premeditation may be inferred from the facts and circumstances. *Murry v. State*, 713 P.2d 202, 206 (Wyo.1986); *Goodman v. State*, 573 P.2d 400, 407 (Wyo. 1977).

Persons convicted of premeditated murder often have questioned what amount of time is required in "thinking over" or "deliberating upon" for juries to find that sufficient premeditation existed. Our rule is:

> Premeditation need not have existed for any given length of time before the act, it being sufficient that it existed at the time of the act; and the intent and the act may be as instantaneous as successive thoughts. *Sandoval v. People*, 117 Colo. 588, 192 P.2d 423 (1948).

*Young v. State*, 849 P.2d 754, 761 (Wyo.1993) (quoting *Murry v. State*, 713 P.2d 202, 207 (Wyo.1986)). *See also Rude v. State*, 851 P.2d 15, 17 (Wyo.1993); *Collins v. State*, 589 P.2d 1283, 1292 (Wyo.1979).

In this case, the jury had before it the evidence of the violent assaults upon the victim by Hightower and others. These assaults continued for a substantial period of time—more than an instant. The jury also heard evidence that prior to the final assault which left the victim under a pile of rocks in the North Platte River, Hightower said to him, "we are going to kill you * * *." Not only was there strong evidence of the first category of evidence described in *Bouwkamp*, but the jury could infer a motive to conceal the robbery. The manner of the killing was consistent with a " 'preconceived design' to take [the] victim's life in a particular way for a 'reason' " (*Bouwkamp*, 833 P.2d

at 495) consistent with the motive. All this evidence was sufficient to permit the jury to conclude that Hightower did "purposely and with premeditated malice" (WYO.STAT. § 6–2–101) kill the victim. The *Bouwkamp* analysis leads ineluctably to that conclusion.

No reversible error is found in this record, and the Judgment and Sentence entered in the trial court must be affirmed.